## The Illinois Central Railroad Company

### *v.*

### The County of Union.

1. Swamp lands—*when selected by Illinois Central Railroad Co.* Swamp and overflowed lands selected by the Illinois Central Railroad Company in lieu of other lands sold or pre-empted, after the list thereof properly certified was

filed for record in the proper county, can not be recovered by the county in which they lie, as the legal title to such lands is in the railroad company and not in the county.

2.   Under the two grants to the State of Illinois of lands for the purpose of constructing a railroad, and that of swamp and overflowed lands, the State took the whole legal title, with full power of disposition, without regard to the uses for which the lands were granted.

3.   Upon the selection of the lands granted the State for railroad purposes, by the Illinois Central Railroad Company, as provided in the statute, the grant to the State under the act of Congress of Sept. 20, 1850, became certain, and the grant attached to the particular lands selected, and the title to them vested in the railroad company.

APPEAL from the Circuit Court of Union county; the Hon. MONROE C. CRAWFORD, Judge, presiding.

Messrs. GREEN & GILBERT, for the appellant.

Messrs. MORELAND & RICH, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action of ejectment, brought by the county of Union against the Illinois Central Railroad Company, to recover possession of all of section 8, township 13 south, range 2 west, except the south-east quarter of the north-west quarter.

The plaintiff recovered and defendant appealed.

The county claims title by virtue of an act of Congress, approved September 28, 1850, (9 U. S. Stat. at large, 519; and see Ill. Rev. Stat. 1874, p. 93,) granting to the State of Illinois the swamp and overflowed lands therein, and by virtue of the act of the General Assembly of this State granting the swamp and overflowed lands to the counties in which they respectively lie.   (Laws 1852, p. 178.)

The railroad company claims title by virtue of the act of Congress of September 20, 1850, (9 U. S. Stat. at large, 466; and see Ill. Rev. Stat. 1874, p. 92,) granting to the State of Illinois certain portions of the public lands for the purpose of constructing a railroad, and the subsequent act of the Gen-

eral Assembly of this State of Feb. 10, 1851, incorporating
the Illinois Central Railroad Company and granting the same
lands to it that were granted to the State by the act of Congress
of September 20, 1850.

The plaintiff made proof that the land described in the
declaration was, in 1850, and still is, swampy and overflowed,
and thereby unfit for cultivation. It is in Union county.

The grant by Congress by the act of September 20, 1850,
was of certain lands to be used in the construction of a railroad,
being each alternate section designated by even numbers
for six sections in width on each side of the line of the proposed
railroad; and it was provided, in the event that any of
such six sections had been sold or pre-empted before the line
of said railroad should be definitely fixed, that then the Governor
was authorized to appoint agents, who should select other
lands in lieu of those sold or pre-empted, within fifteen miles
of the line of such railroad on each side thereof.

The lands in controversy are more than six miles and less
than fifteen miles from the line of the track and right of way
of defendants' railroad.

By act of the General Assembly (Laws 1871-2, p. 550, and
Rev. Stat. 1874, p. 496,) the record in the proper county, or a
transcript thereof of the list purporting to contain the tracts of
land in such county selected by the Illinois Central Railroad
Company, and purporting to be certified by the Commissioner
of the General Land Office, was made *prima facie* evidence of
the title of the company to the lands so selected.

There were introduced in evidence portions of the records
of the recorder's office of Union county showing the list purporting
to contain the tracts of land selected by the Illinois
Central Railroad Company, and purporting to be certified by
the Commissioner of the General Land Office on March 13,
1852, which list contains and includes the lands in controversy.

We do not see why, under the laws referred to above, this

did not make proof of title in the railroad company to the lands on March 13, 1852.

And the county's claim of title from the State was not derived until afterwards, on June 22, 1852, by the act of the legislature of that date granting to the counties in which they lay the swamp and overflowed lands. Laws 1852, p. 178.

But it is contended for the county that its claim of title under this act relates back to September 28, 1850, the date of the act of Congress granting the swamp lands to the State, and that its title is to be taken as inuring to it from that date by virtue of said act of Congress; and that at that time the previous railroad grant did not operate to convey these particular lands, because the railroad had not been located and the lands selected.

The position is this, that by the act of Congress of September 20, 1850, lands within a certain distance of the line of a proposed railroad were granted to the State to aid in the construction of the railroad; that by the act of Congress of September 28, 1850, the swamp lands were granted to the States to enable them to reclaim swamp lands within their limits.

That under the decision in *Railroad Company* v. *Fremont County*, 9 Wall. 89, until the line of the railroad was definitely fixed upon the ground, there could be no certainty as to the particular sections of lands falling within the grant; nor could the title to any particular section on the line of the road vest in the State or railroad company; that the grant was in the nature of a float until this line was permanently fixed.

And as the line of the railroad had not been located on September 28, 1850, the date of the swamp land grant, nor until a long time afterward, the railroad company not even having been incorporated until February 10, 1851,—that, therefore, the railroad grant was inoperative upon the lands in controversy, and they passed under the swamp land grant by Congress of September 28, 1850. As the railroad grant

and the swamp land grant are to the State for different purposes, they are considered by counsel, in effect, as though they were grants to different persons.

The argument places the county in a like favorable position as though the swamp land grant had been made to the county itself by Congress on September 28, 1850.

This is manifestly not a correct view of the subject.

Under the two grants by Congress to the State, the latter had the whole legal title to the lands with the full power of disposition of the legal title without regard to the uses for which the lands were granted. By the act of the General Assembly of February 10, 1851, the State granted to the railroad company all the lands which might be selected along the line of the railroad under the railroad grant made by the United States to the State by virtue of the act of Congress of September 20, 1850. A list of the lands as having been selected by the railroad company and by agents appointed by the Governor, as authorized by the act of Congress of September 20, 1850, is certified to on March 13, 1852, by the Commissioner of the General Land Office as having been made, which includes the lands in controversy, and recommending that the lands be approved to the State, to which is added the approval of the Secretary of the Interior. The statute makes the record of this list so certified *prima facie* evidence of the title of the railroad company to the lands so selected. At this time, March 13, 1852, at least, if not before, the line of the railroad had been definitely fixed and the selection of the lands in controversy made, as, unless the the line had been located, the selection could not have been made as authorized by the act of Congress of September 20, 1850, as is certified. Upon the making of this selection the subject of the grant under the last named act became certain, and the grant attached to the particular lands selected, and the title to them vested in the railroad company. After this time it is, on June 22, 1852, that the county for the first time acquires any claim of interest in the lands, and it is by the

act of the General Assembly of that date granting to the counties all the swamp and overflowed lands within their respective boundaries. But this did not operate upon the lands in controversy, as they had before this time been conveyed by the State to the railroad company, and the full legal title vested in the company. And besides, this very act itself of June 22, 1852, under which the county derives its claim of title, recognizes the fact of this selection of lands made by the railroad company, and excludes all idea of the operation of the act on them by providing, as it does, in the second section, that whenever any swamp and overflowed lands within the limits of any county lying outside of the six sections and within the fifteen miles of the Central railroad and branches have been selected by the Central railroad company, under the provisions of the act of Congress approved September 20, 1850, it shall be lawful for any such county to select other lands in lieu thereof, within the fifteen miles authorized by the act of September 20, 1850. And the third section of the act provides, that the Auditor of Public Accounts shall furnish to the counties a full abstract of all the swamp and overflowed lands within their limits, and of all the swamp and overflowed lands which have been, under the act of September 20, 1850, selected by the Central railroad company in lieu of lands sold by the United States in said six sections since the passage of the act of Congress of September 28, 1850, and this for the purpose, as we must suppose, of furnishing such evidence to the counties as would enable them to act under the above provision of the second section in the selecting of other lands in lieu of lands selected by the railroad company.

We are of opinion the evidence fails to show title in the county, and does show title in the railroad company, and the judgment is reversed.

*Judgment reversed.*